IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WALTER FRANCIS AKSAMIT      *
         Petitioner,

     v.                    *      CIVIL ACTION NO. WDQ-06-631

NANCY ROUSE, et al.          *
         Respondents.

                       ***

## MEMORANDUM

On March 8, 2006, Walter Francis Aksamit ("Petitioner") filed this 28 U.S.C. § 2254 Petition for habeas corpus relief, challenging his 2003 convictions in the Circuit Court for Baltimore County, Maryland.  Paper No. 1.  Respondents have filed an Answer to the Petition and Petitioner has filed a Reply.  Paper Nos. 14 & 16.   After consideration of all pleadings and exhibits, the Court sees no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(d) & (e)(2).  For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

Procedural History

In January of 2003, Petitioner was charged with counts of attempted first degree arson, first degree assault, attempted robbery with a deadly weapon, attempted robbery, reckless endangerment, and threat of arson.  Paper No. 14, Ex. 1.  On April 9, 2003, Petitioner, trial counsel, and the prosecutor appeared before Circuit Court Judge John Grason Turnbull II and indicated that a plea agreement had been reached.  *Id*., Ex. 2 at 2.  The prosecutor informed Judge Turnbull that Petitioner would plead guilty to attempted first degree arson, first degree assault, and attempted robbery with a deadly weapon in exchange for the nolle prosequi of the remaining three charges.  *Id*.  The prosecutor indicated that the State also would be recommending a sentence "within the guidelines range of one to six years."  Paper No. 14, Ex. 2.  The following plea colloquy ensued:

THE COURT:          How old are you sir?

THE DEFENDANT:   45, sir.

THE COURT:       How far did you go in school, sir?

THE DEFENDANT:   College graduate.

THE COURT:       You can read and write and understand the English language?

THE DEFENDANT:   Yes, sir.

THE COURT:       You are entering a guilty plea to attempted first-degree arson – that carries up to thirty years' imprisonment; count two, first-degree assault, which carries up to twenty-five years' imprisonment; count three, attempted robbery with a dangerous and deadly weapon, carries up to twenty years' imprisonment.  The guidelines are one to six years.   Mr. Barry is free to argue.

                 At the time of disposition I can give you anything from probation theoretically up to the maximum.

                 Do you understand what the plea agreement is?

THE DEFENDANT:   Yes, I do.

THE COURT:       You are entering a guilty plea.  When you do that you give up your right to a jury trial.  That's twelve people chosen at random in the community.  You would have the right to participate in the selection of those jurors.  Any verdict they render must be unanimous and they must be [sic] find you guilty beyond a reasonable doubt and to a moral certainty.

                 Do you understand what a jury is?

THE DEFENDANT:   Yes, sir.

THE COURT:       And do you understand you're waiving that right?

THE DEFENDANT:   Yes, sir, I do.

THE COURT:       You also give up the right to require the State to produce witnesses on the witness stand.  You give up the right to confront them and cross-examine them.

                 Do you understand that?

THE DEFENDANT:   Yes, sir.

THE COURT:    Normally you have the right to remain silent.  If this were a jury trial and you chose not to testify, I would instruct the jury not to infer any guilt from your silence.  If this were a court trial, I would not infer any guilt from your silence.  When you plead guilty you give up the right to remain silent.

           Do you understand?

THE DEFENDANT: Yes.

THE COURT:    You also give up any technical rights you might have such as illegal arrest or perhaps an illegal confession.

           Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:    Are you currently on any type of probation or parole?

THE DEFENDANT: No, sir.

THE COURT:    Now, other than the plea agreement, has anyone made any threats, promises, or any other inducements to get you to enter these three guilty pleas?

THE DEFENDANT: No.

THE COURT:    You also have a right to request the Court of Special Appeals in Annapolis to review these pleas.  If they agree to do so, it's limited to four grounds. The first is the jurisdiction of the Court, the second is whether I've given you an illegal sentence, the third is whether or not your plea is free and voluntary, and the last is whether or not you were properly represented.

           Are you satisfied with the services of your attorney, Mr. Barry?

THE DEFENDANT: Yes, I am.

THE COURT:    All right.  Have a seat.

           The Court is satisfied his waiver is knowingly, voluntarily, and intelligently given.

Paper No. 14, Ex. 2 at 3-6.

    Thereafter, the prosecutor read the following facts into the record:

[O]n the 20th of December, 2002, at 10:22 in the morning, Baltimore County Police officers responded to a Cash Express located at 9920-A York Road in the Cockeysville section of Baltimore County, Maryland in reference to a holdup alarm.

Upon arrival they observed the Defendant wearing a dark-colored hooded sweatshirt, sunglasses, rubber gloves standing inside the lobby of that business holding a red plastic one-gallon gas can. The officer noted an extremely strong odor of gasoline in the air. He was ordered to the floor and to drop the gasoline container, which he complied with.

Ultimately, Nona Williams, an employee of the store, indicated, your Honor, that the Defendant entered the business wearing a hooded sweatshirt, sunglasses, carrying a plastic bag. He set the plastic bag on the counter, he showed Williams a gas can, plastic gas can, and then related to Williams that he had enough gas to blow the whole place down. He then demanded money and instructed Ms. Williams that he was serious, don't push any buttons. Then he asked how long it would take to open the safe.

Ms. Williams at that point pushed the alarm button. In so doing, the business was set up so that automatically the front door would be locked, effectively locking the Defendant inside the business.

The Defendant then poured gasoline into the service slot at the teller window where Ms. Williams was and stated that he was going to light the gas. Ms. Williams said that the Defendant was agitated and nervous and walked away from the teller window flicking a lighter. Shortly after the police arrived.

Ms. Williams related that the Defendant's first words were, This is a robbery. She said that she feared for her life and was afraid that he would light the gas and burn her to death.

It should be noted, your Honor, when the business was automatically locked she, too, was isolated and had no means to escape the business. There was not an exit in her portion of the business once the front doors were locked. Of course she had no way to escape should he have the moment to light the gasoline that he had poured out.

Ultimately he was arrested. He was advised of his Miranda rights. He admitted to the offense, indicated an apology to the victim, and also indicated that he had done the same thing in PG County.

And he would be identified here today as the person who conducted himself in the manner that I have described.

And that would be the State's case as to each count.

Paper No. 14, Ex. 2 at 6-8.

Trial counsel indicated that there were no additions or corrections to the statement.  Judge Turnbull concluded that "the statement of facts is supportive of Defendant's respective pleas.  The verdict is guilty to the first, second, and third counts."  *Id*., Ex. 2 at 8.  Sentencing disposition of the case was held *sub curia* as Judge Turnbull ordered an evaluation by the Office of the court psychiatrist, terming Petitioner's criminal behavior "bizarre" and "a bit unusual."  *Id*., Ex. 2 at 8-10.

A disposition hearing was held before Judge Turnbull on June 3, 2003.  *Id*., Ex. 3.  Judge Turnbull sentenced Petitioner to three concurrent ten-year sentences on the attempted first degree arson, first degree assault, and attempted robbery with a deadly weapon counts.  *Id*.  Petitioner filed an application for leave to appeal the entry of the guilty plea, arguing that he was not given the opportunity to testify on his own behalf and the trial court improperly rejected the findings of the court-ordered psychiatrist.  *Id*., Ex. 4.  On April 26, 2004, the Court of Special Appeals of Maryland denied the application for leave to appeal.  *Id*., Ex. 5.

On October 26, 2004, Petitioner filed a petition for post-conviction relief in the Circuit Court for Baltimore County, arguing that trial counsel Edward Barry was ineffective due to his failure to: (A1) investigate the case, interview parties, or view the security videos of the incident; (A2) include Petitioner in the plea negotiation process or to request a pre-trial conference; (A3) meet with Petitioner until immediately prior to trial;[1] (A4) inform Petitioner that he could request the trial court to bind itself to the plea agreement; (A5) inform Petitioner that the trial court could reject the State's recommended sentence and impose any sentence up to the statutory maximum; and (A6) formulate or explore any possible defense.  *Id*., Ex. 6.  Petitioner further argued that Judge Turnbull: (B1) violated his right to a jury trial when he failed to inform Petitioner that he was rejecting the plea

---

[1]     Petitioner also claimed that trial counsel recommended that he accept the State's plea agreement and informed him that he was facing an 18-month sentence with the possibility of work release.  Paper No. 14, Ex. 6.

agreement and did not provide Petitioner the opportunity to withdraw the plea; (B2) violated his rights by ordering a psychiatric evaluation prior to sentencing; (B3) violated the Maryland Rules of Procedure by imposing an enhanced sentence without stating in writing the reasons for the upward departure from the sentencing guidelines; (B4) showed bias towards Petitioner by disregarding the psychiatric evaluation conducted prior to sentencing; and (B5) showed bias towards Petitioner by permitting the prosecution to make a false statement that he never apologized to the victim, when he clearly did so in writing and in person.  Paper No. 14, Ex. 6.  According to Petitioner, his basis for filing the petition was not to challenge his convictions, but to "have the sentence amended."  *Id*., Ex. 7 at 11.

A post-conviction hearing was held before Circuit Court Judge Susan Souder on April 27, 2005.  *Id*., Ex. 7.  Petitioner raised an additional ineffective assistance ground at the hearing, claiming that trial counsel Barry failed to respond to Petitioner's request for assistance in determining what grounds to raise in the application for leave to appeal the entry of his plea.  *Id*., Ex. 7 at 32-35.  On April 28, 2005, Judge Souder denied post-conviction relief.  *Id*., Ex. 8.  In his application for leave to appeal, Petitioner abandoned a number of claims.  He only raised two ineffective assistance claims, going to Mr. Barry's alleged failure to inform him of the jeopardy associated with his plea agreement and Mr. Barry's failure to respond for requested assistance with Petitioner's application for leave to appeal.  *Id*., Ex. 9.  In addition, he claimed that Judge Turnbull failed to comply with Maryland Rule 4-243 as to the plea agreement and did not document his reasons for imposing a sentence in excess of the guidelines. *Id*., Ex. 9.  The application for leave to appeal was summarily denied by the Court of Special Appeals on December 14, 2005.  *Id*., Ex. 10.

Petitioner filed this § 2254 Petition alleging that his convictions should be vacated because:

(1)     His Fifth and Sixth Amendments rights were violated when the trial court failed to properly advise him of the "jeopardy inherent to the plea agreement;"

(2)      His Fifth and Sixth Amendment rights were violated when the trial court imposed a sentence above the guidelines range without proving additional findings;

(3)      His Fifth Amendment right was violated when the trial judge failed to state his reason for imposing a sentence above the applicable sentencing range; and

(4)      His Sixth Amendment right was violated when he was forced to file a *pro se* application for leave to appeal.

Paper No. 1.

## Threshold Considerations

### Procedural Default

Respondents argue that Petitioner's first claim is procedurally defaulted as it substantially differs with the claim raised on post-conviction review to the Court of Special Appeals.  Paper No. 14, Answer at 12-13.  They further argue that Petitioner's second claim is procedurally defaulted because, although raised on post-conviction review at the circuit court level, it was not presented in Petitioner's application for leave to appeal in the Court of Special Appeals.  *Id*., Answer at 15. Petitioner argues that Respondents' argument that ground one was not properly raised at the state court level cannot be substantiated, as he did raise it as a constitutional challenge in his post-conviction petition.  Paper No. 16 at 2-4.  He acknowledges that ground two was not raised in his application for leave to appeal from the denial of post-conviction relief.  *Id*. at 6.   The Court concurs with Respondent's procedural default arguments.[2]

---

[2]      Petitioner did raise a post-conviction ground similar to ground one presented here.   He argued that his right to a jury trial was violated when Judge Turnbull rejected the plea agreement without affording him the opportunity to withdraw his plea.  Paper No. 14, Exs. 6 & 8.  The post-conviction court denied the claim, citing to Maryland Rule 4-243.  *Id*., Ex.  8 at 6.  In his application for leave to appeal, however, Petitioner only alleged that Judge Turnbull failed to comply with Maryland Rule 4-243 with regard to the plea agreement.  The claim is therefore procedurally defaulted.  Were this Court to examine the claim, however, it would find it to be without merit in light of the record set out in the plea and disposition hearing transcripts.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See id.*; *Bassette v. Thompson*, 915 F.2d 932, 936-37 (4th Cir. 1990); *Collier v. Jones*, 910 F.2d 770, 772-73 (11th Cir. 1990).

While the Court agrees with Respondents that Petitioner's first and second claims are procedurally defaulted, its inquiry does not end here. Even where claims have been procedurally defaulted, this Court must still consider whether it should reach the merits of the defaulted claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup, supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327; *Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

*Schlup* observes that

a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare....To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id*. at 323; *see also House v. Bell*, 126 S.Ct. 2064, 2077-78 (2006).

Petitioner was afforded an opportunity to demonstrate the existence of cause for his failure to properly raise the aforementioned claims in the Maryland courts and the prejudice resulting from this failure.  Paper No. 15.  Given the record before this Court, his response fails to make the requisite showing under *Schlup* which would enable the undersigned to consider his two defaulted claims.  Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

<u>Standard for § 2254 Review</u>

This Petition is to be decided under the amendments to 28 U.S.C. § 2254(d) & (e).  *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333,  n.7 (1997), "which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).  In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id*. at 412-413.  A state court

decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With the aforementioned standards in mind, the Court shall examine Petitioner's remaining claims of trial court error and ineffective assistance.

Analysis

Failure to Provide Reasons for Imposing a Sentence Above the Applicable Sentencing Range

Petitioner claims that Judge Turnbull did not provide any factual basis for imposing an "enhanced" sentence [above the guidelines] as his "justification was verbally stated as opinion and was unproven."[3] In her post-conviction decision, Judge Souder found that Maryland sentencing guidelines are not mandatory, but rather complement the sentencing discretion of the court. She

---

[3] In support of this claim, Petitioner relies on federal case law citing to 18 U.S.C. § 3553(c), which requires a federal court to state in open court at the time of sentencing the reasons for its imposition of the particular sentence.

concluded that as long as the sentence does not exceed the maximum sentence allowed by law it is not an illegal sentence.  Paper No. 14, Ex. 8 at 6.

Plainly, the sentences imposed by Judge Turnbull do not violate the dictates of the U.S. Constitution.  First, Maryland sentencing guidelines are discretionary; they are not binding on the sentencing judge.[4]  Second, Petitioner was sentenced under, not over, the maximum penalties available under Maryland law for the three offenses.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  In addition, as noted by Judge Souder, the reasons for Judge Turnbull's decision to impose a sentence above the suggested guidelines and the recommendation of the State under the plea agreement are plainly indicated on the record.[5]  Paper No. 14, Ex. 3 at 6 & 8; Ex. 8 at 7.   The post-conviction decision shall not be disturbed.[6]

### Trial Counsel's Failure to Assist Petitioner with Application for Leave to Appeal

Petitioner claims that he contacted trial attorney Barry two days after disposition of the case to request assistance in the filing of an application for leave to appeal.   He asserts that counsel did not respond to this and to an additional request for six weeks, forcing him to file a *pro se* application. This contention is governed by clearly established federal law-- specifically by the Supreme Court's

---

[4]     *See Teasley v. State*, 298 Md. 364, 367, 470 A.2d 337, 339 (Md. 1984).

[5]     As acknowledged by Petitioner's trial counsel, while Petitioner had no other convictions, he had been involved in similar incidents in Baltimore and Prince George's Counties. Paper No. 14, Ex. 3 at 3-4. Counsel argued that according to the court-appointed psychiatrist's report, there was a suggestion that Petitioner lacked the intent to be a danger by pushing the Clerk or burning the building and was just acting out of desperation. *Id*., Ex. 3 at 6. Judge Turnbull, however, took issue with this opinion, noting that with "all due respect" to the psychiatrist "this man trying to rob four check cashing stations to get $5,000 for use over the holidays in my opinion does represent a threat to society."  *Id*.  He later concluded that Petitioner did pose a severe threat to the members of the general public when imposing sentence. *Id*., Ex. 3 at 8.

[6]     Petitioner does not raise a direct attack on the voluntariness of his plea. Given the plea colloquy between Judge Turnbull and Petitioner, such a claim would be legally and factually ineffectual.

decision in *Strickland v. Washington*, 466 U.S. 668 (1984).   To establish a claim of ineffective assistance of counsel under *Strickland*, a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant.  *Id*. at 688, 692.

> In her post-conviction decision, Judge Souder made the following statement:
>
> At the hearing Petitioner raised an additional issue regarding the effectiveness of counsel.  Petitioner claimed that counsel was ineffective when he failed to respond to a letter asking counsel what grounds there were, if any, to file a request for leave to appeal within the time for filing such a request.  As Petitioner was informed of the grounds upon which leave to appeal may be sought during his guilty plea, counsel's conduct was not deficient and it did not prejudice the Petitioner as Petitioner timely filed a request for leave to appeal on his own.

Paper No. 14, Ex. 8 at 5-6.

The Court finds no basis to overturn Judge Souder's decision.  Petitioner acknowledges he did not ask trial counsel to file an appeal.  *Id*., Ex. 7 at 33.   He did in fact file a timely *pro se* appeal of his plea conviction with the Maryland courts.  Further, in his post-conviction testimony Petitioner acknowledged that trial counsel Barry ultimately answered his request for advice on which grounds to raise in the application for leave to appeal and that counsel opined that there were no legitimate grounds on which to raise an appeal.   *Id*., Ex. 7 at 33.   Moreover, at the post-conviction hearing Petitioner testified that the only issues he would have raised on appeal that were not presented were the grounds presented in his post-conviction petition.  *Id*., Ex. 7 at 54.   On post-conviction review, Judge Souder did not deny any of Petitioner's grounds on the basis of waiver or procedural bar. Rather, she decided each claim on the merits.   Paper No. 14, Ex. 8.  The Court finds that Petitioner has failed to demonstrate any prejudice from trial counsel's alleged inactions with regard to the appellate process.[7]  The post-conviction decision survives scrutiny under 28 U.S.C. § 2254(d).

---

[7]     The Court observes that an application for review of sentence was filed on June 18, 2003, and denied by a three judge panel.   Paper No. 14, Ex. 1.   In addition, a motion for modification/reduction of sentence

<u>Conclusion</u>

Petitioner pleaded guilty under the presumption that the sentencing court would ultimately accept the State's recommendation and impose a sentence within the guideline range of one to six years.  Undoubtedly dissatisfied with the cumulative ten-year sentence imposed by Judge Turnbull, Petitioner has availed himself of his right to file a federal habeas petition.   His claims are either procedurally defaulted or do not show violations of the Constitution, laws, and treaties of the United States.  The Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice.  A separate Order follows.


Date: <u>March 23, 2007</u>                         <u>              /s/              </u>
                                                 William D. Quarles Jr.
                                                 United States District Judge

---

was filed on July 28, 2003, and subsequently denied by Judge Turnbull.  *Id*.